# Exhibit "A"



McNeely McGuigan & Esmi LLC

Law and Mediation Offices

Moorestown Office:
8 East Main Street
Moorestown, New Jersey 08057
(856) 439-0057  Fax (856) 439-0041

Princeton Office:
Princeton Overlook
100 Overlook Drive, 2nd Fl.
Princeton, New Jersey 08540
(609) 375-2651 Hours by appointment

MEMBERS
LORI M. McNEELY*
COLLEEN A. McGUIGAN*
REBECCA G. ESMI*^∆

*New Jersey Bar | *New York Bar | ^Connecticut Bar
∆ R.1:40 qualified mediator on roster of court-approved civil mediators

PLEASE REPLY TO MOORESTOWN

December 23, 2019

Mr. James Worrell
59 North Central Avenue
Surf City, New Jersey 08008

BAE Systems Benefit Center
Post Office Box 7223
Rantoul, Illinois 61866-7223

BAE Systems US Pension
Post Office Box 981912
El Paso, Texas 79998

USAA Brokerage Accounts
Post Office Box 659453
San Antonio, Texas 78265-0990

Re:  **Estate of Christine B. Worrell, deceased**
     **Docket Number:  2019=2104**

Dear Parties:

Enclosed please find Order to Show Cause and Verified Complaint respecting the above-captioned matter.

Very truly yours,

*/s/ Colleen A. McGuigan/db*

Colleen A. McGuigan, Esquire

CAM:db
Enclosures
Cc: Rosemarie Miles (w/enclosure)

123 120 19 180948P 1006 16 1

TRUE COPY

Mary Ann C. O'Brien

MARY ANN C. O'BRIEN
SURROGATE JUDGE

FILED

DEC 10 2019

SURROGATE
DEPUTY CLERK

Colleen A. McGuigan, Esquire (# 042501996)
McNEELY McGUIGAN & ESMI LLC
8 E. Main Street
Moorestown, New Jersey 08057
(856) 439-0057 phone
(856) 439-0041 fax
Attorneys for Plaintiff, Rosemarie Miles

| | |
|---|---|
| In the Matter of the Estate of CHRISTINE B. WORRELL, deceased | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION PROBATE PART BURLINGTON COUNTY DOCKET NO: 2019-2104 Civil Action |
| ROSEMARIE MILES, as Executor of the Estate of Christine B. Worrell<br><br>          Plaintiff,<br><br>v.<br><br>JAMES WORRELL, individually; BAE SYSTEMS BENEFITS CENTER; BAE SYSTEMS US PENSIONS SERVICE CENTER; USAA FINANCIAL ADVISORS, LLC.; and any successors in interest; JOHN DOE 1-5<br><br>          Defendants | ORDER TO SHOW CAUSE WITH SUMMARY ACTION |

THIS MATTER being brought before the Court by McNEELY McGUIGAN & ESMI

LLC, (Colleen A. McGuigan, Esquire appearing), attorneys for Plaintiff, Rosemarie Miles, seeking

relief by way of summary action based upon the facts set forth in the Verified Complaint filed

herewith; and the Court having determined that this matter may be commenced by Order to Show

Cause as a summary proceeding pursuant to R. 4:83-1 and for good cause shown.

IT IS on this _10_ day of _December_, 2019, ORDERED that Defendants, James Worrell,

BAE System Benefits Center, BAE Systems US Pension Service Center, and USAA Financial

Advisors, Inc. appear and show cause before the Honorable Paula T. Dow, P.J.Ch., in the Superior

Court, Chancery Division, Probate Part at the Burlington County Olde Courthouse located at 120

1

High Street, Mount Holly, New Jersey 08060 at _9_ o'clock in the _fore_noon or as soon thereafter as counsel can be heard, on the _3i_ day of _January_, 20_20_ why Judgment should not be entered:

A.      Restraining the plan administrators of Decedent's non-probate assets, including, but not limited to Decedent's pension, 401K account, brokerage/saving account, and IRA account(s), from distributing same to James Worrell or any other putative beneficiary until further Order of this Court, or in the alternative, allowing the plan administrator to deposit the proceeds of the account(s) into the Court pending a determination of the rightful beneficiary thereof;

B.      Restraining the James Worrell from accessing or dissipating those funds until further Order of this Court, including but not limited to Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

C.      Restraining James Worrell from instituting any action against BAE or USAA for the recovery of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

D.      Declaring that James Worrell is not entitled to recover the proceeds of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

E.      Declaring that the Estate of Christine B. Worrell is entitled to recover the proceeds of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

F.      Compelling Defendants BAE Systems, Inc. to immediately provide all information regarding to the Decedent's 401(k), pension benefits and any other employment-related benefits, including but not limited to the amount of any death benefit and the listed beneficiary;

2

123 120 19 180948P 1005 16 1

G.     Compelling Defendants USAA Financial Advisors, Inc. to immediately provide all information regarding to the Decedent's brokerage and IRA accounts and any other accounts owned by Decedent prior to her death, including but not limited to the amount of any said accounts and the listed beneficiary(ies);

H.     For attorney's fees and costs in favor of the Estate and against James Worrell, as this Court deems just and proper; and

I.     Ordering such other and further relief as this Court may deem just and proper.

**AND it is further ORDERED** that:

1.     Any party in interest who wishes to be heard with respect to any of the relief requested in the verified complaint served with this order to show cause shall file with the Surrogate of Burlington County and serve upon the attorney for the plaintiff at the address set forth above, a written answer, an answering affidavit, a motion returnable on the date this matter is scheduled to be heard, or other response to this order to show cause and to the relief requested in the verified complaint by _January 17_, 20 _20_. Filing shall be made with the Surrogate of Burlington County at 50 Rancocas Road, Mount Holly, New Jersey 08060. Such responding party in interest shall also file with such Surrogate by the foregoing date a proof of service upon the plaintiff.

2.     Any party in interest who fails to timely file and serve a response in the manner provided in paragraph 1 of this order to show cause shall be deemed in default, the matter may proceed to judgment without any further notice to or participation by such defaulting party in interest, and the judgment shall be binding upon such defaulting party in interest.

3.     Parties in interest are hereby advised that a telephone call to the plaintiff, to the plaintiff's attorney, to the Surrogate, or to the Court will not protect your rights; you must file and

3

serve your answer, answering affidavit, motion or other response with the filing fee required by

statute. The check or money order for the filing fee shall be made payable to the Surrogate of the

County where this matter is being heard. If you cannot afford an attorney, you may call the Legal

Services office in the county in which you live. A list of these offices is provided. If you do not

have an attorney or are not eligible for free legal assistance through the Legal Services office (or

such office does not provide services for this particular type of proceeding), you may obtain a

referral to an attorney by calling one of the Lawyer Referral Services. A list of these office

numbers is also provided.

    4.    If no party in interest timely files and serves a response to this order to show cause

as provided for above, the application may be decided by the Court on or after the date this matter

is scheduled to be heard, and may be decided on the papers without a hearing, provided that the

plaintiff has filed a proof of service and a proposed form of judgment as required by paragraphs 7

and 9 of this order to show cause.

    5.    If a party in interest timely files a response as provided for above, the court may

entertain argument and may take testimony on the date this matter is scheduled to be heard.

    6.    The plaintiff must file and serve any written reply to the response of a party in

interest by *January 23, 2020* The reply papers together with a proof of service must be filed

with the Surrogate in the county listed above

    7.    Plaintiff shall submit to the Surrogate an original and two copies of a proposed form

of judgment addressing the relief sought on the date this matter is scheduled to be heard (along

with a postage-paid return envelope) no later than ___7___ days before the date this matter is

scheduled to be heard.

4

8.    A copy of this order to show cause, the verified complaint, and all affidavits submitted in support of this application, all of which shall be certified thereon by plaintiff's attorney to be true copies, shall be served upon the parties in interest listed in ~~paragraph ____ of the~~ *or alternatively shall be personally served upon the parties in interest listed in the Complaint* complaint, by certified mail, return receipt requested and by regular mail within *10* days of the date hereof, in accordance with R. 4:67-3, R. 4:4-3 and R. 4:4-4, this order to show cause being original process.

9.    The plaintiff shall file with the Surrogate of Burlington County a proof of service of the documents required by paragraph 8 above to be served on the parties in interest no later than *7* days before the date this matter is scheduled to be heard.

10.    The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than *3* days before the return date.

Mary Ann C. O'Brien
Mary Ann C. O'Brien Surrogate Judge
Burlington County Court Facility
50 Rancocas Road
Mount Holly, NJ 08060

5

## Directory of Superior Court Deputy Clerk's Offices
## County Lawyer Referral and Legal Services Offices

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 482-0618
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 696-5550
LEGAL SERVICES
(856) 691-0494

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 236-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court,
Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

Directory of Superior Court Deputy Clerk's Offices / County Lawyer Referral and Legal Services    Page 2 of 3
Revised 08/24/2013, CN: 10153

123 120 19 18038P 1008 161

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn:  Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 691-0494

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(908) 859-4300
LEGAL SERVICES
(908) 475-2010





FILED

DEC 0 4 2019

SURROGATE
DEPUTY CLERK

Colleen A. McGuigan, Esquire (# 042382000)
McNEELY McGUIGAN & ESMI LLC
8 E. Main Street
Moorestown, New Jersey 08057
(856) 439-0057 phone
(856) 439-0041 fax
Attorneys for Plaintiff, Rosemarie Miles

| | |
|---|---|
| In the Matter of the Estate of CHRISTINE B. WORRELL, deceased | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION PROBATE PART CAMDEN COUNTY<br><br>DOCKET NO: 2019-2104<br><br>Civil Action |
| ROSEMARIE MILES, as Executor of the Estate of Christine B. Worrell<br>                    Plaintiff,<br>v.<br><br>JAMES WORRELL, individually; BAE SYSTEMS BENEFITS CENTER; BAE SYSTEMS US PENSIONS SERVICE CENTER; USAA FINANCIAL ADVISORS, LLC.; and any successors in interest; JOHN DOE 1-5<br>                    Defendants | **VERIFIED COMPLAINT** |

Plaintiff, Rosemarie Miles, Executrix of the Estate of Christine Worrell, residing at 55

Princeton Drive, Delran, New Jersey, by way of Verified Complaint says;

### I. THE INTERESTED PARTIES

1.     Rosemarie Miles ("Plaintiff") is the mother of Christine B. Worrell ("Decedent")

who passed away on August 31, 2019.  A copy of the Decedent's death certificate is attached

hereto as **Exhibit A.**

2.     Pursuant to the Decedent's Last Will and Testament, Plaintiff was appointed as the Executrix on September 16, 2019.   Attached hereto as **Exhibit B** is a copy of Decedent's Last Will and Testament and a true and correct copy of Plaintiff's Executor Short Certificate.

3.     Plaintiff is interested in this action as a putative beneficiary of certain deferred savings plans owned by Decedent.

4.     James Worrell ("Mr. Worrell") is the ex-spouse of Decedent and resides at 509 N. Central Avenue, Surf City, New Jersey 08008.

5.     Upon information and belief, Mr. Worrell is an interested party in this action as the possible designated beneficiary of certain deferred savings plans and other bank accounts owned by Decedent.

6.     BAE Systems, Inc. ("BAE") is the Decedent's former employer.

7.     BAE Systems Benefits Center, with a primary place of business located at P.O. Box 7223, Rantoul, Illinois 61866-7223, is named in this action as the plan administrator of a certain deferred savings plans owned by Decedent.

8.     BAE Systems US Pensions Service Center, with a primary place of business located at P.O. Box 981912, El Paso, Texas 79998, is named in this action as the plan administrator of a certain deferred savings plan owned by Decedent.

9.     USAA Financial Advisors, Inc. ("USAA") with a primary place of business located at USAA Brokerage Accounts, Survivor Relations, P.O. Box 659453, San Antonio, Texas 78265-9009 is named in this action as the administrator of certain brokerage and IRA funds owned by Decedent.

10.     John Does 1-5, said names being fictitious, designate any person(s) or entity(ies) named as a beneficiary (either expressly or by survivorship) by Decedent for any non-probate

assets that she owned prior to her death; or who may be otherwise responsible for the administration of a non-probate asset belonging to Decedent at the time of her death.

11.     Addresses of the above interested parties are as follows:

James Worrell
509 N. Central Avenue
Surf City, NJ 08008

BAE Systems Benefits Center
P.O. Box 7223
Rantoul, Illinois 61866-7223

BAE Systems US Pension Service Center
Dept. Pen.
P.O. Box 981912
El Paso, Texas 79998

USAA Brokerage Accounts
Survivor Relations
P.O. Box 659453
San Antonio, Texas 78265-9009

## II.     FACTUAL ALLEGATIONS

12.     In or around the Spring of 2015, Decedent suffered a seizure and was subsequently diagnosed, after being airlifted from Virginia to Temple Hospital in Philadelphia, with an Arteriovenous Malformation of the brain.

13.     Treatment for her arteriovenous malformation ("AVM") included three angiograms and surgical procedures in 2015 and 2016.  Following her second and third surgeries, Decedent contracted meningitis, a blood stream infection, and severe dizziness, diplopia and a gait imbalance.

14.     As a result of the AVM, Decedent had difficulty with short term memory, complex sequencing and processing speed, cognitive deficits, emotional lability, irritability and poor frustration tolerance.   A copy of a letter from her treating neurologist from Temple University Hospital dated October 30, 2017 confirming her medical conditions is attached hereto as **Exhibit C.**

15.     Decedent, who had been employed by BAE since October 2007 was finally terminated from her employment in February 14, 2017 (after her medical leave and extensions thereto had expired).

16.     In or about June 2018, Decedent was finally approved for Social Security Disability, retroactive to May 2017 (five months following when they determined she became disabled). Attached hereto as **Exhibit D**, is a Notice of Award letter from the Social Security Administration dated June 22, 2018.

17.     Decedent continued to struggle each day to complete some basic daily tasks.

18.     During the course of Decedent's employment, BAE offered its employees an optional deferred savings plan ("401K Plan"), life insurance and pension benefits.

19.     Decedent was a participant in the 401K Plan, life insurance and the pension plan.

20.     During the Decedent's marriage to Mr. Worrell, the Decedent designated him as beneficiary of her 401K Plan with BAE.  Attached hereto as **Exhibit E** is a copy of monthly statement dated October 6, 2019 confirming the existence, amount and designated beneficiary of the 401K Plan.

21.     Upon information and belief, the Decedent also designated Mr. Worrell as beneficiary of her defined benefit plan ("pension") during the course of her marriage to him.

22.     Upon information and belief, the Decedent also maintained a life insurance policy following her termination from BAE, but same was cancelled for non-payment of premiums.

23.     Upon information and belief, Decedent had approximately $222,720.63 in her 401K plan with BAE around the time when her employment was terminated. Attached hereto as **Exhibit F** is a copy of an April 24, 2017 statement from BAE confirming the amount within Decedent's 401K plan at that time.

24.     Decedent also owned several accounts, including an individual brokerage account and an IRA account with USAA.

4

25. Monies within Decedent's BAE 401K were subsequently transferred or "rolled over" to her USAA IRA account. Attached hereto as **Exhibit G** is a copy of her July 2017 monthly statement from USAA and a hand-written note from Decedent found stapled to the statement confirming some of the transfers.

26. During the period of Decedent's disability, especially before being approved for Social Security Disability, she utilized funds from her BAE 401(k) and USAA IRA accounts to pay for her living expenses.

27. Upon information and belief, the Decedent also designated Mr. Worrell as beneficiary of her brokerage accounts with USAA during the course of her marriage to him. Attached hereto as **Exhibit H** is a copy of the September 2019 monthly statement from USAA confirming the existence and amount of the brokerage accounts.

28. Decedent's USAA brokerage statements do not identify a designated beneficiary in the event of Decedent's death.

29. Plaintiff, as Executor of the Estate, contacted USAA and learned that the Estate was not a beneficiary, but the representative would not identify the designated beneficiary.

30. One of Decedent's nephews, one of Decedent's only heirs (Decedent's Will left her entire estate equally to her three nephews), contacted USAA and learned that he is not a designated beneficiary.

31. Upon information and belief, Decedent's former spouse is the designated beneficiary of the USAA brokerage/IRA accounts.

32. As part of Plaintiff's responsibilities as Executor of the Estate includes, inter alia, the marshalling of the assets and debts and the filing of an Inheritance Tax Return ("ITR").

33.   The ITR also requires the identification of certain probate and non-probate assets, including to whom those assets pass and the amount of such asset.

34.   BAE refuses to identify whether there is a designated beneficiary associated with Decedent's pension benefit(s) and USAA refuses to identify the designated beneficiary to the brokerage and IRA accounts.

35.   Consequently, Plaintiff is unable to complete the ITR for the Estate.

36.   On or about June 21, 2010 Decedent and her former spouse, Mr. Worrell entered into a Property Settlement Agreement.  Attached hereto as **Exhibit I** is a true and correct copy of the June 21, 2010 Property Settlement Agreement.

37.   On or about January 8, 2018, the Decedent and Mr. Worrell were divorced in the Family Division of the Burlington County Superior Court.  Attached hereto as **Exhibit J** is a true and correct copy of their Final Judgment of Divorce.

## III.   COUNT ONE

38.   Pursuant to page 9, under Article III, paragraph 5 entitled, "Distribution of Retirement Benefits" of the June 21, 2010 Property Settlement Agreement, the Decedent and Mr. Worrell agreed to:

> "waive any rights they may have to share in the retirement benefits of the other party.  Wife accordingly waives all right, title, claim or interest she might otherwise have by equitable distribution or otherwise in and/or to Husband's retirement benefits.  Similarly, Husband accordingly waives all right, title, claim or interest he might otherwise have by equitable distribution or otherwise in and/or to Wife's retirement benefits."  See **Exhibit I**.

39.   Furthermore, paragraph 4 under that same Article on page 9 provides:

> "Wife hereby waives all right, title, claim or interest she might have by equitable distribution or otherwise, in any bank account in Husband's name.  Similarly, for the mutual promises and covenants herein contained, Husband hereby waives all right, title,

claim or interest he might have by equitable distribution or otherwise, in any bank accounts in Wife's name."

40. Lastly, pursuant to the second page of their Final Judgment of Divorce, it was ordered and adjudged that no equitable distribution was sought.

41. Upon information and belief, the Decedent's 401K Plan was titled in her name and was not changed following their divorce.

42. Upon information and belief, the Decedent's USAA accounts (which are comprised of an "individual" account and an IRA account) were titled in her name and were not changed following their divorce.

43. Upon information and belief, the Decedent passed away before changing the designation of beneficiary on her 401K and USAA accounts.

44. Under the express, specific waivers set forth within the Property Settlement Agreement, James Worrell has no valid claim to the 401K Plan, BAE pension plan benefits, Decedent's personal brokerage account with USAA or Decedent's IRA with USAA.

45. Upon information and belief, Decedent did not designate a contingent beneficiary of the 401K Plan, pension benefits, or her brokerage/IRA accounts with USAA.

46. Consequently, Decedent's estate is entitled to the proceeds of Decedent's 401K Plan, pension benefits, or her brokerage/IRA accounts with USAA.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter an Order restraining the plan administrators of Decedent's non-probate assets belonging to Decedent, including, but not limited to Decedent's pension, 401K account, brokerage/saving account, and IRA account(s), from distributing same to James Worrell or any other putative beneficiary until further Order of this Court, or in the alternative, allowing the plan

administrator to deposit the proceeds of the account(s) into the Court pending a determination of the rightful beneficiary thereof;

B.     Enter an Order restraining the James Worrell from accessing or dissipating those funds until further Order of this Court, including but not limited to Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

C.     Enter an Order restraining James Worrell from instituting any action against BAE or USAA for the recovery of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

D.     Enter an Order declaring that James Worrell is not entitled to recover the proceeds of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

E.     Enter an Order declaring that the Estate of Christine B. Worrell is entitled to recover the proceeds of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

F.     Enter an Order compelling Defendants BAE Systems, Inc. to immediately provide all information regarding to the Decedent's 401(k), pension benefits and any other employment-related benefits, including but not limited to the amount of any death benefit and the listed beneficiary;

G.     Enter an Order compelling Defendants USAA Financial Advisors, Inc. to immediately provide all information regarding to the Decedent's brokerage and IRA accounts and any other accounts owned by Decedent prior to her death, including but not limited to the amount of any said accounts and the listed beneficiary(ies);

8

H.   Enter an Order of attorney's fees and costs in favor of the Estate and against James Worrell, as this Court deems just and proper; and

I.   Order such other and further relief as this Court may deem just and proper.

## IV.   COUNT TWO

47.   Plaintiff repeats each of the allegations contained in the preceding paragraphs and incorporates those allegations as if set forth at length herein.

48.   The New Jersey Probate Code provides at N.J.S.A. 3B:3-14, *inter alia*:

> "…a divorce or annulment revokes any revocable dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument…"

49.   On  August 31, 2019, Decedent died leaving a Last Will and Testament dated December 21, 2014.

50.   Decedent's Last Will and Testament leaves her entire estate to her three nephews, Andrew Tillinghast, Matthew Tillinghast and Patrick Tillinghast.

51.   As of October 6, 2019, the Decedent's 401K account with BAE had a balance of $1,634.04.  See **Exhibit C.**

52.   As of September 30, 2019, the Decedent's two accounts with USAA (account numbers ending 8523 and 0308) had balances of $492.86 and $79,362.22 respectively.  See **Exhibit E.**

53.   Benefits associated with any pension through BAE are unknown.

54.   Upon information and belief, there is no written contract between the Decedent and James Worrell that could be interpreted or construed as indicating any intent by Decedent that any beneficiary designation of James Worrell survived the divorce.

9

55.     Consequently, their divorce on January 8, 2018 revoked James Worrell's interest in the proceeds of Decedent's 401K Plan, pension benefits, or her brokerage/IRA accounts with USAA.

56.     The only valid claimant to said Decedent's 401K Plan, pension benefits, or her brokerage/IRA accounts with USAA is the Estate of Christine B. Worrell.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.     Enter an Order restraining the plan administrators of Decedent's non-probate assets belonging to Decedent, including, but not limited to Decedent's pension, 401K account, brokerage/saving account, and IRA account(s), from distributing same to James Worrell or any other putative beneficiary until further Order of this Court, or in the alternative, allowing the plan administrator to deposit the proceeds of the account(s) into the Court pending a determination of the rightful beneficiary thereof;

B.     Enter an Order restraining the James Worrell from accessing or dissipating those funds until further Order of this Court, including but not limited to Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

C.     Enter an Order restraining James Worrell from instituting any action against BAE or USAA for the recovery of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

D.     Enter an Order declaring that James Worrell is not entitled to recover the proceeds of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

E.     Enter an Order declaring that the Estate of Christine B. Worrell is entitled to recover the proceeds of Decedent's pension benefits, 401K account, and her brokerage/saving/IRA accounts with USAA;

F.     Enter an Order compelling Defendants BAE Systems, Inc. to immediately provide all information regarding to the Decedent's 401(k), pension benefits and any other employment-related benefits, including but not limited to the amount of any death benefit and the listed beneficiary;

G.     Enter an Order compelling Defendants USAA Financial Advisors, Inc. to immediately provide all information regarding to the Decedent's brokerage and IRA accounts and any other accounts owned by Decedent prior to her death, including but not limited to the amount of any said accounts and the listed beneficiary(ies);

H.     Enter an Order of attorney's fees and costs in favor of the Estate and against James Worrell, as this Court deems just and proper; and

I.     Order such other and further relief as this Court may deem just and proper.

Order such other and further relief as this Court may deem just and proper.

McNeely McGuigan & Esmi, L.L.C.
Attorneys for Administratrix, Rosemarie Miles

COLLEEN McGUIGAN, ESQUIRE

Dated: Dec. 3, 2019

123 120 19 180948P 1005 16 1

11

## CERTIFICATION

Pursuant to R. 4:5-1(b)(2), I hereby certify that to the best of my knowledge and belief, this matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration, nor is any such proceeding contemplated at this time.   Further, at this time, there are no known other parties who should be joined in this action.

I certify that the foregoing statements are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: 12/3/19

COLLEEN McGUIGAN, ESQUIRE

12

### R. 1:38-7(c) CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(c).

Dated: 12/3/2019

COLLEEN A. McGUIGAN, ESQUIRE

### VERIFICATION

I am the Plaintiff in the foregoing Verified Complaint. I am familiar with the facts set forth herein. The facts set forth in the Verified Complaint are true to the best of my knowledge and belief. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: Dec. 2, 2019

Rosemarie Miles, Executrix of the Estate
of Christine B. Worrell

123 120 19 180948P 1005 16 1

# EXHIBIT A

123 120 19 180948P 1005 16 1

B0C10294852

**NEW JERSEY DEPARTMENT OF HEALTH**
**CERTIFICATE OF DEATH**

STATE FILE NUMBER: 20190049637

| 1a. Legal Name of Decedent (First, Middle, Last, Suffix) | | | LMB ONLY |
|---|---|---|---|
| Christine Byrne Worrell | | | |

1b. Also Known As (AKA), If Any (First, Middle, Last, Suffix)

| 2. Sex | 3. Social Security Number | 4a. Age | 5. Date of Birth (Mo/Day/Yr) |
|---|---|---|---|
| Female | | 49 Years | 09/06/1969 |

| 6. Birthplace (City & State/Foreign Country) |
|---|
| New York, New York |

| 7a. Residence-State | 7b. County | 7c. Municipality/City | |
|---|---|---|---|
| New Jersey | Burlington | Maple Shade Township | |
| 7d. Street and Number | | 7e. Apt No. | 7f. Zip Code: 08052 | 7g. Inside City Limits? Yes |
| 13 Gainer St. | | | | |

| 8a. Ever In US Armed Forces? No | 8b. If Yes, Name of War: | 8c. War Service Dates (From/To): |
|---|---|---|

| 9. Domestic Status at Time of Death | 10. Name of Surviving Spouse/Partner (Name given at birth or on birth certificate) |
|---|---|
| Divorced | |

11. Father's Name (First, Middle, Last)
Robert Byrne

12. Mother's Name Prior to First Marriage (First, Middle, Last)
Rosemarie Shannon

| 13a. Name of Informant | 13b. Relationship to Decedent |
|---|---|
| Rosemarie Miller | Mother |
| 13c. Mailing Address (Street and Number, City, State, Zip Code) 55 Princeton Dr., Delran, NJ 08075 | |

| 14. Method of Disposition | 15. Place of Disposition (name of cemetery, crematory, other) | 16. Location- City & State/Foreign Country |
|---|---|---|
| Removal from State/Cremation | Ivy Hill Crematory | Philadelphia, Pennsylvania United States |

17. Name and Complete Address of Funeral Facility
Weber Funeral Home, 112 Broad St, Riverton, NJ 08077-1392

| 18. Electronic Signature of Funeral Director | 19. NJ License Number |
|---|---|
| Thomas E Weber | 23.JF00260500 |

| 20. Decedent Education | 21. Decedent of Hispanic Origin? | 22. Decedent Race |
|---|---|---|
| Bachelor's degree (BA, AB, BS) | Not Spanish / Hispanic / Latino | White |

| 23. Occupation of Decedent (Type of work done/ most of life, even if retired) | 24. Kind of Business/Industry |
|---|---|
| Project Coordinator | Defense Contracting |

25. Name and Address of Last Employer
Lockheed Martin

| 26. Date Pronounced Dead (Mo/Day/Yr) | 28. Name of Person Pronouncing Death | | |
|---|---|---|---|
| 08/31/2019 | Nicholas Roy | | |
| 27. Time Pronounced Dead (24-hr) 0047 | 29. License Number 28MB00336100 | 30. Date Signed (Mo/Day/Yr) 08/31/2019 | |
| 31. Date of Death (Mo/Day/Yr) 08/31/2019 | 32. Time of Death (24-hr) Approx-0047 | 33. Was Medical Examiner Contacted? Yes | 34. Place of Death Hospital: Inpatient |

35a. Facility Name (If not institution, give street and number)
Jefferson Hospital - Cherry Hill

| 35b. Municipality | 35c. County |
|---|---|
| Cherry Hill Township | Camden |

**CAUSE OF DEATH:** 36a. PART I - IMMEDIATE CAUSE - (final) disease or condition resulting in death. Subsequently list conditions, if any, leading to the cause listed on Line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST.

| | Interval Between Onset and Death |
|---|---|
| Immediate Cause a. Hemorrhagic Shock | 6 hours |
| Due to (or as a consequence of): b. Massive Lower GI Hemorrhage | 1 days |
| Due to (or as a consequence of): c. | |
| Due to (or as a consequence of): d. | |

| 36b. PART II - Enter other significant conditions contributing to death but not resulting in underlying cause given in PART I: | 37. Was an Autopsy Performed? No |
|---|---|
| | 38. Were Autopsy Findings Available to Complete Cause of Death? Not Applicable |

| 39. Date of Injury (Mo/Day/Yr) | 40. Time of Injury (24-hr) | 41. Place of Injury (e.g. home, construction site, restaurant) | 42. Injury at work? |
|---|---|---|---|
| | | | |
| 43a. Location of Injury (Number and Street, Zip Code) | 43b. Municipality | 43c. County | 43d. State |

| 44. Describe How Injury Occurred | 45. If Transportation Injury: |
|---|---|

| 46. Manner of Death | 47. Did Decedent Have Diabetes? | 48. Did Tobacco Use Contribute to Death? | 49. If Female, Pregnancy State |
|---|---|---|---|
| Natural | Unknown | Unknown | Not pregnant within the past year |

| 50. Certifier Type | 51. Name, Address, and Zip Code of Certifier | |
|---|---|---|
| Pronouncer and Certifier | - Nicholas E Roy, D.O. 107 Berlin Rd, Cherry Hill, NJ 08034 | |

| 52. Electronic Signature of Certifier | 53. License Number | 54. Date Certified (Mo/Day/Yr) |
|---|---|---|
| Nicholas E Roy | 28MB00336100 | 08/31/2019 |
| 55. Electronic Signature of Local Registrar | 56. District No. | 57. Date Received | Case ID Number |
| Carolynn Tiesi | V0425 | 09/09/2019 | 2514485 |

**DATE ISSUED:** September 09, 2019

**ISSUED BY:**
New Jersey Department of Health, Office of Vital Statistics and Registry

This is to certify that the above is correctly copied
from a record on file in my office.
Certified copy not valid unless the raised Great
Seal of the State of New Jersey or the seal of the
issuing municipality or county, is affixed hereon.

Vincent T. Arrisi
State Registrar
Office of Vital Statistics and Registry

20 19000948P 1005 15.1

# EXHIBIT B

123 120 19 180948P 1005 16 1



## Last Will and Testament

### of

### CHRISTINE BYRNE WORRELL

I, CHRISTINE BYRNE WORRELL, a resident of the Township of Maple Shade, County of Burlington, and State of New Jersey, being of sound and disposing mind, memory and understanding, do hereby make, publish and declare this to be my Last Will and Testament, revoking all prior Wills and Codicils.

FIRST: I direct my Executrix hereinafter named to pay all my just debts and funeral expenses as soon as may be convenient after my decease and in the due course of the administration of my estate.

SECOND: I, authorize my mother, ROSEMARIE MILES, to make an anatomical gift to take effect upon my death and prior to embalming of my body. This gift may be any of my organs that may be transplanted to give life or better quality of life to another individual. Should my mother, ROSEMARIE MILES, predecease me or be unable or unwilling to so act, I hereby authorize ROSEANN DEATS to make this anatomical gift.

THIRD: To my Executrix I leave my personal property to be distributed according to instructions I shall leave elsewhere. In the absence of such instructions I direct that my personal property be added to my residuary estate pursuant to N.J.S.A. 3B:3-11.

FOURTH: If at the time of my death I own the property at Watergate Condominiums, 115 E. Kings Highway, #198, Maple Shade, New Jersey, I authorize my Executrix to sell said property subject to any mortgage against it at that time and the proceeds of such sale shall be placed in a trust for the benefit of my nephews, ANDREW TILLINGHAST, MATTHEW TILLINGHAST, and PATRICK TILLINGHAST.

FIFTH: All the rest, residue and remainder of my estate, both real and personal, of every name, nature and kind, and wheresoever the same may be situate, I give, devise and bequeath to my nephews, ANDREW TILLINGHAST, MATTHEW TILLINGHAST, and PATRICK TILLINGHAST, in equal shares, to be held in trust by my Trustee, ROSEMARIE MILES. Should any of my nephews predecease me, that nephew's share shall be distributed to the others in equal shares.

SIXTH: In the event that any beneficiary under my Will has not attained the age of twenty-one (21) years, I appoint my mother, ROSEMARIE MILES, as

123 120 19 180948P 1005 16 1

Trustee of such child or children who have not attained the age of twenty-one (21) years. I give to my Trustee the right to invest, reinvest, and keep invested the assets of the trust, and to use the income and so much of the principal as may be necessary in her sole judgment for the education or extraordinary medical needs of such child or children. When such child or children shall attain the age of twenty-one (21) years or later at the discretion of my Trustee, I direct that my Trustee shall pay to that child or children his share of the principal and accumulated earnings of the trust.

SEVENTH: All estate, inheritance, transfer, legacy, succession or other similar taxes and duties, and any interest and penalties thereon, payable on any property which is devised and bequeathed under the provisions of this Will or on any other property which shall constitute a taxable part of my estate, whether or not passing under this Will, shall be paid out of the principal of my residuary estate.

EIGHTH: I hereby nominate, constitute and appoint my mother, ROSEMARIE MILES, to be Executrix and Trustee of this my Last Will and Testament. Should my mother, ROSEMARIE MILES, be unable or unwilling to serve, I appoint ROSEANN DEATS to serve as Executrix and Trustee under this my Last Will and Testament.

I hereby direct that my said Executrix and Trustee shall be exempt from giving any fiduciary bond as Executrix and Trustee. However, if any fiduciary bond shall be required by law, then it is my will, and I hereby direct that my said Executrix and Trustee shall be exempt from giving any surety on said fiduciary bond.

NINTH: I authorize and empower my Executrix, without authorization of court, to sell, convey, mortgage, lease, invest, reinvest, exchange, manage, control, retain or otherwise deal with any and all property, real and personal, comprising my estate, and no purchaser need look to the application of the purchase money; to adjust, compromise and settle any claim or demands in favor of or against my estate upon such terms as is deemed advisable; and to make distribution under this Will in kind or in money, or partly in kind and partly in money.

TENTH: The Trustee under this Will shall have full power and authority to manage, invest and reinvest said trust estates, to sell the same or any part thereof at public auction or private sale, without order of any court, and to execute and deliver good and sufficient deeds or other instruments to convey and transfer the same, no purchaser being bound to look at the application of the purchase money; to decide all questions as to what constitutes income or principal; to hold securities in the name of

2

123 120 19 180948P 1005 16 1

the Trustee; to retain the investments which are received from my estate or to invest or reinvest the same in securities or other property which would ordinarily be considered suitable for a trust investment.  In making payments of and in distributing principal, my Trustee shall have full power and authority to sell and convert into money the whole or any part of said trust estates, no purchaser being bound to look to the application of the purchase money, and may make such payments or distributions in cash or in kind or partly in each, the determination of the Trustee with respect thereto to be conclusive and binding upon all persons.

I, CHRISTINE BYRNE WORRELL, the Testatrix, sign my name to this instrument this 21 day of  December  , 2014, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my Last Will and Testament and that I sign it willingly (or willingly direct another to sign for me), that I execute it as my free and voluntary act for the purpose therein expressed, and that I am eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence.

_____
CHRISTINE BYRNE WORRELL

ROBERT E. DEATS  _____  and  SCOTT R. CASSIDY  _____

the witnesses, sign our names to this instrument, and being duly sworn, do hereby declare to the undersigned authority that in our presence the Testatrix signs and executes this instrument as her Last Will and Testament and that she signs it willingly (or willingly directs another to sign for her), and that each of us states that at the request of the Testatrix and in the presence and hearing of the Testatrix, each of us hereby signs this Will as witness to the Testatrix's signing, and that to the best of our knowledge the Testatrix is eighteen (18) years of age or older, of sound mind, and under no constraint or undue influence.

_____  1590 Wynwood Dr., Cinnaminson, NJ

_____  2204 Derby Dr., Cinnaminson, NJ

_____

3

123 120 19 180948P 1005 16 1

STATE OF NEW JERSEY        )
                                               ss:
COUNTY OF BURLINGTON    )

      Subscribed, sworn to and acknowledged before me by

CHRISTINE BYRNE WORRELL, the Testatrix, and subscribed and sworn to before me

by    ROBERT E. DEATS     and   SCOTT R. CASSIDY

the witnesses, this 21st day of December , 2014.

*Roseann Deats*

ROSEANN DEATS
A Notary Public of New Jersey
My Commission Expires DECEMBER 30, 2015

4

123 120 19 180948P 1008 16 1

𝔖𝔱𝔞𝔱𝔢 𝔬𝔣 𝔑𝔢𝔴 𝔍𝔢𝔯𝔰𝔢𝔶                    Docket # 2019-2104

# 𝔅𝔲𝔯𝔩𝔦𝔫𝔤𝔱𝔬𝔫 𝔆𝔬𝔲𝔫𝔱𝔶 𝔖𝔲𝔯𝔯𝔬𝔤𝔞𝔱𝔢'𝔰 𝔆𝔬𝔲𝔯𝔱

**EXECUTOR SHORT
CERTIFICATE**

In the Matter of the Estate of ·  CHRISTINE BYRNE WORRELL          , DECEASED

I, MARY ANN C. O'BRIEN, Surrogate, do hereby certify that the last Will of the above named decedent, late of the County of Burlington and the State of New Jersey, was admitted to probate by the Surrogate of Burlington County, on   September 16, 2019   and Letters Testamentary were issued to   ROSEMARIE MILES

the Executor named therein, who is duly authorized to take upon himself the administration of the estate of said testator in accordance with the Will and said Letters Testamentary have never been revoked and still remain in full force and effect.

WITNESS my hand and seal of office, this

16TH   day of   September 2019



_Mary Ann C. O'Brien_

Form3  12-2017

**MARY ANN C. O'BRIEN, Surrogate**
Judge of the Surrogate's Court

123 12019 180948P 1005 16 1

# EXHIBIT C

123 120 19 180948P 1005 16 1



**TEMPLE UNIVERSITY**
A Commonwealth University

**Kadir Erkmen,. MD**
Associate Professor Neurosurgery

**Director of Cerebrovascular Neurosurgery**
Neurosurgery Residency Program Director
Temple University Hospital

**Lewis Katz School of Medicine**
Department of Neurosurgery

**Administrative Office**
3401 N. Broad Street; Suite C540
Philadelphia, PA 19140
215 707 2619
215 707 3831 Fax

October 30, 2017

To Whom It May Concern:

This letter is in support of Christine Worrell's (9/6/1969) application for social security disability. She has been under my care beginning in May 2015 at which time she was found to have a cerebellar arteriovenous malformation (AVM). Treatment for the AVM has involved three cerebral angiograms and embolization of the lesion. Following the second embolization she was readmitted for meningitis and a blood stream infection. An MRI performed at that time demonstrated small acute infarctions within the posterior right lower midbrain and spenium. Following her third embolization she experienced severe dizziness, horizontal nystagmus, diplopia, and gait imbalance. A referral for a neuropsychological evaluation was given for her continued difficulty with short term memory, complex sequencing and processing speed.  Since that time Christine continues with cognitive deficits which are consistent with her cerebellar injury in addition to emotional lability, irritability and poor frustration tolerance. There has been no improvement in these areas and at this time no further recovery is anticipated. Based upon this it is recommendation that Christine be granted permanent disability.

If you require additional information please contact my office.

Sincerely,

Kadir Erkmen, M.D.

123 120 19 180948P 1005 16 1

# EXHIBIT D

123 120 19 180948P 1005 18 1

# Social Security Administration
# Retirement, Survivors and Disability Insurance
## Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  June 22, 2018
Claim Number:  ⬛⬛⬛-9772HA

CHRIS STAVROS FOR
CHRISTINE BYRNE WORRELL
9 ENDSLEIGH PLACE
MARLTON, NJ 08053

CHRISTINE B WORRELL is entitled to monthly disability benefits beginning May 2017.

We have chosen you to be her representative payee.  Therefore, you will receive her checks and use the money for her needs.

## The Date You Became Disabled

We found that CHRISTINE B WORRELL became disabled under our rules on November 30, 2016.

To qualify for disability benefits, CHRISTINE B WORRELL must be disabled for five full calendar months in a row.  The first month she is entitled to benefits is May 2017.

## What We Will Pay And When

We pay Social Security benefits for a given month in the next month.  For example, Social Security benefits for March are paid in April.

- You will receive $29,255.00 around June 23, 2018.

- This is the money Ms. WORRELL is due for May 2017 through May 2018.

- CHRISTINE B WORRELL's next payment of $2,757.00, which is for June 2018, will be received on or about the second Wednesday of July 2018.

- After that you will receive $2,757.00 on or about the second Wednesday of each month.

- Later in this letter, we will show you how we figured these amounts.

- The day of the month you receive CHRISTINE WORRELL's payments depends on her date of birth.



See Next Page

123 120 19 180948P 1005 16 1

9772HA                                    Page 2 of 6     

## Your Benefits

The following chart shows CHRISTINE B WORRELL's benefit amount(s) before any deductions or rounding. The amount she actually receive(s) may differ from her full benefit amount. When we figure how much to pay her, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| May | 2017 | $2,677.70 | Entitlement began |
| December | 2017 | $2,731.20 | Cost-of-living adjustment |
| January | 2018 | $2,757.20 | Credit for additional earnings |

## Information About Representative's Fees

We have approved the fee agreement between you and your representative.

Ms. WORRELL's past-due benefits are $35,255.00 for May 2017 through May 2018. Under the fee agreement, the representative cannot charge you more than $6,000.00 for his or her work. The amount of the fee does not include any out-of-pocket expenses (for example, costs to get copies of doctors' or hospitals' reports). This is a matter between you and the representative.

## How To Ask Us To Review The Determination On The Fee Amount

You, the representative or the person who decided your case can ask us to review the amount of the fee we say the representative can charge.

If you think the amount of the fee is too high, write us within 15 days from the day you get this letter. Tell us that you disagree with the amount of the fee and give your reasons. Send your request to this address:

      Social Security Administration
      Office of Hearings Operations
      Attorney Fee Branch
      5107 Leesburg Pike
      Falls Church, Virginia 22041-3255

The representative also has 15 days to write us if he or she thinks the amount of the fee is too low.

If we do not hear from you or the representative, we will assume you both agree with the amount of the fee shown.

## Information About Past-Due Benefits Withheld To Pay A Representative

Based on the law, we must withhold part of past-due benefits to pay an appointed representative. We cannot withhold more than 25 percent of past-due benefits to pay an authorized fee. We withheld $6,000.00 from Ms. WORRELL's past-due benefits to pay the representative.

We are paying the representative from the benefits we withheld. Therefore,

# EXHIBIT E

123 120 19 180948P 1005 16 1

 **BAE SYSTEMS**

Statement Date: October 6, 2019

 **BenefitsNavigator**
benefitsnavigator.baesystems.com

V009761

 **BAE Systems Benefit Center**
1-888-900-4223
between 8 a.m. and 8 p.m. Eastern Time,
Monday through Friday

CHRISTINE B. WORRELL
13 GAINOR AVENUE
MAPLE SHADE NJ 08052

# Quarterly Account Statement - 401(k) Savings Plan

### A note about 401(k) plan limits

For the 2019 calendar year, the Internal Revenue Code (IRC) annual limit for pretax contributions and Roth 401(k) contributions combined is $19,000 for those under age 50, and $25,000 for those age 50 and over. These limits apply across all qualified employer plans you may participate in during a given year - which can be important if you are a new hire and participated in a prior employer's plan. Total contributions (employee and employer) to the Plan cannot exceed $56,000 for employees under age 50, and $62,000 for those age 50 and over. Your contributions are also subject to a $280,000 compensation limit.



## 401(k) Savings Plan

| Account Summary | 07-01-2019 to 09-30-2019 |
|---|---|
| **Opening Balance** | **$1,648.98** |
| Deposits | $1.52 |
| Withdrawals | $0.00 |
| Fees/Expenses | -$18.75 |
| Gains/Losses | $2.29 |
| **Closing Balance** | **$1,634.04** |
| Vested Balance | $1,634.04 |
| **Your Personal Rate of Return** | **-0.91%** |

Scan here to learn how a professional can manage your account.



**Contributions and Earnings**



| | | |
|---|---|---|
| ■ You | $1,634.04 | 100% |
| Employer | $0.00 | 0% |
| **Total** | **$1,634.04** | **100%** |



Delivered by Alight Solutions

V009761



Quarterly Account Statement                                                                 Page 3

| Fund Name | Current Allocation |
|---|---|
| Westwood Management Corp | 3% |
| Vanguard Developed Markets Index | 3% |
| Vanguard Emerging Markets Stock Index | 1% |
| Time Square Capital Management | 3% |
| Touchstone Sands Capital Emerging Markets Growth | 4% |
| Vanguard Institutional Extended Market Index Trust | 3% |

## Activity Detail by Fund

| 07-01-2019 to 09-30-2019 | All Funds Total | Asset Class | | |
|---|---|---|---|---|
| | | GIC/Stable Value | GIC/Stable Value | Bond |
| Fund Name | | BAE Stable Val | Fed Money Mkt | VanInstTotBond |
| Opening Balance | $1,648.98 | $197.82 | $124.42 | $54.08 |
| Dividends | $1.52 | $0.00 | $0.00 | $0.00 |
| Gains/Losses | $2.29 | $1.33 | $0.67 | $1.32 |
| Expenses | -$18.75 | -$2.26 | -$1.41 | -$0.62 |
| Closing Balance | $1634.04 | $196.89 | $123.68 | $54.78 |
| Closing Units | | 11.441 | 11.841 | 0.484 |
| Unit Price (NAV) | | 17.209000 | 10.445373 | 113.110000 |

| 07-01-2019 to 09-30-2019 | Asset Class | | | |
|---|---|---|---|---|
| | Bond | Balanced | Large U.S. Equity | Large U.S. Equity |
| Fund Name | Dod&Cox Income | Van. Wellington | Dod & Cox STK | Inst 500 Index |
| Opening Balance | $70.07 | $165.56 | $273.87 | $185.81 |
| Dividends | $0.00 | $1.09 | $0.00 | $0.00 |

Quarterly Account Statement

| 07-01-2019 to 09-30-2019 | Asset Class | | |
|---|---|---|---|
| | International | International | International |
| Fund Name | Van Develop Mkt | Van Emerg Mkt | Touchstone Sand |
| Closing Balance | $44.71 | $10.34 | $76.57 |
| Closing Units | 2.167 | 0.122 | 5.881 |
| Unit Price (NAV) | 20.630000 | 85.030000 | 13.020000 |

## Your Fee and Expense Details
07-01-2019 to 09-30-2019

| | Amount |
|---|---|
| Administrative Fee | $18.75 |

## Your Beneficiaries
As of 09-30-2019

You may change your 401(k) Savings Plan beneficiaries at any time using BenefitsNavigator at benefitsnavigator.baesystems.com.

| Primary Beneficiary | Benefit Percentage | Relationship |
|---|---|---|
| JAMES J. WORRELL | 100% | Spouse |

## For More Information

Review your account statement carefully. If you believe this statement doesn't accurately represent your contributions, investment allocations, or account activity, contact the BAE Systems Benefit Center within 45 days of this statement.

**Online**
BenefitsNavigator
at benefitsnavigator.baesystems.com
**Phone**
between 8 a.m. and 8 p.m. Eastern Time, Monday through Friday
toll-free at 1-888-900-4223 (4BAE)
Generally, you'll have a shorter wait time if you call after Tuesday.

V009761



## Investment Restrictions-Legacy GEC Plan

If, prior to your participation in the Plan, you were a participant in the GEC-USA Employees' Retirement Plan and you have a balance from the legacy GEC Plan you may not direct the investment of the portion of your Plan account that represents the amount of your "pension offset" under the BAE Systems Employees' Retirement Plan. This amount will remain invested in the BAE Systems Stable Value Fund until you terminate employment, at which time you may transfer assets out of this fund.

## Investment Restrictions-Equity Wash

An Equity Wash Restriction is required to be placed on funds transferred from the BAE Systems Stable Value Fund. The restriction requires any money transferred from the Stable Value Fund to be moved to any of the noncompeting core funds for a minimum of 90 days before the money can be transferred into the Self-Directed Brokerage Account or the Vanguard Money Market Fund, which are considered competing funds. The restricted funds are tracked from the initial transfer into the noncompeting funds and then restricted by the amount transferred. The **total** amount transferred from the Stable Value Fund must remain in the noncompeting funds and would not affect any transfers into either the Self- Directed Window or the Vanguard Money Market Fund from the remainder of your account balance within the core funds.

Individual funds and portfolios within the Plan may have their own transfer restrictions and/or redemption fees. You may access more information about these restrictions and/or redemption fees by going to the BenefitsNavigator Website at **benefitsnavigator.baesystems.com** and selecting the "Plan Documents" tile on the home page under Highlights for You.

The Plan administrator may, on occasion, either temporarily or permanently restrict the trading ability of you or your beneficiary if you violate the excessive trading policy of the Plan. If you have questions about the Plan's excessive trading policy, please contact the BAE Systems Benefit Center at **1-888-900-4223 (4BAE)**.

The Plan permits you to make daily transfers. Transfer requests processed before 4:00 p.m. Eastern Time (or market close, if earlier) will be effective on the day the request is made. Transfer requests received after that time will be processed the next business day. You may change or cancel your request at any time before market close by going to the BenefitsNavigator Website at **benefitsnavigator.baesystems.com** and selecting "Recent Requests" from the Savings and Retirement main page, or by calling the BAE Systems Benefit Center at **1-888-900-4223 (4BAE)**. Representatives are available Monday through Friday, between 8 a.m. and 8 p.m. Eastern Time (except holidays).

## Self-Directed Brokerage Account (SDBA)

The Plan has a self-directed brokerage account (SDBA) option. The SDBA may be subject to certain investment restrictions, commissions and/or transaction fees. Details related to your SDBA balance and any applicable restrictions and/or fees are provided on a separate statement delivered to you by the SDBA administrator, Alight Financial Solutions. You can also access SDBA balance information by going to the BenefitsNavigator Website at **benefitsnavigator.baesystems.com.**

*Outside the United States, Puerto Rico, and Canada, call +1 718 354 1341 (this is a toll call). Translators are available.

V009761 

Quarterly Account Statement                                                                                    Page 9

## Payment Options Available Under the Plan

You may be eligible for various types of payments of your Plan benefit, depending on the situation. Before you take a payment you will want to consider these options. Whether you're eligible for a particular payment option may depend on your employment status and/or your account balance. For instance, some types of payment are available for specific reasons while you're employed. Other options are only available after your employment ends.

| Payment Options While Employed by BAE Systems | Payment Options After Separation from Service from BAE Systems |
|---|---|
| Hardship | Partial Lump Sum Distribution |
| Age 59½ Distribution | Total Lump Sum Distribution |
| Loan | Periodic Payments for a Specified Amount or Period |

You can get a full description of the payment options by accessing the BenefitsNavigator Website at **benefitsnavigator.baesystems.com** or calling the BAE Systems Benefit Center. This information is also available in the BAE Systems Employees' Savings and Investment Plan Summary Plan Description (SPD).

## Rollover Eligible Distributions from Your Non-Roth Account

The following information applies to payments from the portion of your account that is not part of your Plan Roth Account. If you're receiving a payment that is eligible to be rolled over into an IRA or other employer plan, a 20% Federal tax withholding will be applied to all payments. If you're not age 59½, the 10% early distribution tax also will apply, unless the payment meets an exception.

There are two ways to do a rollover:

- Direct Rollover- You may roll over a distribution directly into an IRA or another employer plan or the designated Roth account in the Plan. (You cannot roll over a distribution to a designated Roth account in another employer's plan.) If you choose a direct rollover your payment will not be taxed in the current year and no income tax will be withheld. Also, your payment will be payable directly to the IRA or other employer plan, or the designated Roth account in the Plan. The taxable portion of your payment will be taxed later when it's distributed from the IRA or other employer plan.
- Sixty (60)–Day Rollover- You may have a payment made to you and then deposit all or part of the payment amount into an IRA or another employer plan within sixty (60) days of the date of the payment. This payment is subject to 20% Federal tax withholding. If you're not age 59½, an additional 10% early distributions tax also will apply, unless there is an exception. If you make a sixty (60)-day rollover of the entire amount of your payment, you will have to use other funds to roll over the amount withheld.

If you roll over the taxable portion of your payment into a Roth IRA or into the Plan's designated Roth account, the taxable portion of the payment will be taxed, but the additional 10% tax on early distributions before age 59½ will not apply as long as later payments meet the requirements for a Roth qualified distribution. Later payments of amounts rolled over to a Roth IRA or into the Plan's designated Roth account will not be taxed (including earnings) if the later payment meets the requirements for a Roth qualified distribution.

 

Case 1:20-cv-00701-RMB-AMD   Document 1-2   Filed 01/22/20   Page 43 of 75 PageID: 48

A payment is considered to be a "qualified distribution" from a Roth account if it's paid–
1. After you're age 59½ (or after your death or disability) and
2. After you have a designated Roth account in the Plan for at least five (5) years
     a. Five (5) years is counted from January 1 of the year you first make a Roth contribution to the Plan
     b. If you rolled over amounts to your Roth account from a designated Roth account of another employer plan, the five (5)-year period will include the period of your Roth contributions in the other employer plan.

There are two ways to do a rollover:

- <u>Direct Rollover</u>– You may roll over a Roth distribution directly into a Roth IRA or into the designated Roth account of another employer plan.

- <u>Sixty (60)-Day Rollover</u>– You may have a qualified distribution made to you and then deposit all or part of the payment amount into a Roth IRA within sixty (60) days of the date of the payment. If your payment is not a qualified distribution, only the taxable earnings may be rolled over into a designated Roth account of another employer plan. If your payment is not a qualified distribution and you don't do a direct rollover of the taxable earnings portion of the payment, 20% will be withheld to satisfy your Federal tax liability. If you're not age 59½ the 10% early distributions tax also will apply, unless the payment meets an exception. If you make a sixty (60)-day rollover of the entire amount of your payment, you'll have to use other funds to roll over the amount withheld.

V009761 

# EXHIBIT F

123 120 19 180948P 1005 16 1



Statement Date: April 24, 2017

V000032

CHRISTINE B. WORRELL
13 GAINOR AVENUE
MAPLE SHADE NJ 08052

*May 2nd, 2017
Don't do anything & let it roll over*



**BenefitsNavigator**
benefitsnavigator.baesystems.com



**BAE Systems Benefit Center**
1-888-900-4BAE
between 8 a.m. and 8 p.m. Eastern Time,
Monday through Friday

# Separation From Employment – 401(k) Savings Plan

Because you are no longer employed by BAE Systems, Inc., you are eligible to receive your 401(k) Savings Plan vested account balance. In addition, you may defer payment of your vested account balance until a later date, but not later than April 1 after the year in which you reach age 70½. Your vested account balance, including any outstanding loan(s), as of **April 20, 2017** was:

| Plan | Vested Balance |
|------|---------------|
| 401(k) Savings Plan | $222,720.63 |

## To Leave Your Balance in the Plan

To leave your balance in the Plan, you don't need to do anything at this time.

## To Request a Payment From the Plan

To request a payment from the Plan at any time, access the BenefitsNavigator website or call the BAE Systems Benefit Center.

Before requesting a payment, we suggest that you contact a tax advisor. In addition, please see the enclosed Payment Rights Notice for an explanation regarding the rights that you may have associated with your payment and the payment options that may be available to you. You'll receive the value of your vested account balance as of the date your payment request is processed.

To request a rollover to an IRA or another eligible employer plan, you'll need the following information:

- The name of the financial institution or employer plan as it should appear on the rollover check
- Your account number

Delivered by Aon



 V000032 

# EXHIBIT G

123 120 19 180948P 1005 16 1

ENV# CEBDJFWRBBDMNGB_BBBBC
USAA FINANCIAL ADVISORS, INC.
THROUGH THE COURTESY OF:
USAA INVESTMENT MANAGEMENT CO.
9800 FREDRICKSBURG ROAD
SAN ANTONIO, TX 78288

USAA FEDERAL SAVINGS BANK
IRA ROLLOVER
FBO CHRISTINE B WORRELL
13 GAINOR AVE
MAPLE SHADE NJ 08052



USAA  number  013122352                                      Member Since 1996

**STATEMENT FOR THE PERIOD JULY 1, 2017 TO JULY 31, 2017**

CHRISTINE B WORRELL - USAA FSB Rollover IRA
Account Number:

For questions about your accounts          **TOTAL VALUE OF YOUR PORTFOLIO**          **$225,352.21**
National: 800 531 8722

www.usaa.com

**FOR YOUR INFORMATION**

Please log on to usaa.com for more detailed information regarding your account.

GTC for Equities will cancel 180 days from trade date. GTC Option orders will remain in force
until the Option Expiration date of said option.

**CHANGE IN VALUE OF YOUR PORTFOLIO**



*Change In Value Of Your Portfolio information can be found in Miscellaneous Footnotes at the end of this statement.*

Account carried with National Financial Services LLC, Member
NYSE, SIPC

Page 1 of 12

Statement for the Period July 1, 2017 to July 31, 2017

CHRISTINE B WORRELL - USAA FSB Rollover IRA
Account Number:



## Account Overview

| CHANGE IN ACCOUNT VALUE | Current Period | Year-to-Date |
|---|---|---|
| BEGINNING VALUE | $24,718.75 | $22,880.09 |
| Additions and Withdrawals | $200,000.00 | $200,000.00 |
| Income | $117.92 | $295.17 |
| Taxes, Fees and Expenses | $0.00 | $0.00 |
| Change in Value | $515.54 | $2,176.95 |
| ENDING VALUE (AS OF 07/31/17) | $225,352.21 | $225,352.21 |

*Refer to Miscellaneous Footnotes for more information on Change in Value.*

| RETIREMENT CONTRIBUTIONS/DISTRIBUTIONS | | |
|---|---|---|
| CONTRIBUTIONS | Current Period | Year-to-Date |
| For Current Year 2017 | $0.00 | $0.00 |
| For Prior Year 2016 | $0.00 | $0.00 |
| ROLLOVERS | | |
| For Current Year 2017 | $200,000.00 | $200,000.00 |
| DISTRIBUTIONS | | |
| For Current Year 2017 | $0.00 | $0.00 |

| INCOME | Current Period | Year-to-Date |
|---|---|---|
| Dividends | $117.92 | $295.17 |
| TOTAL INCOME | $117.92 | $295.17 |

*All Income is tax deferred until it is distributed from the account.*

### ACCOUNT ALLOCATION



Fixed Income 23.8%   Money Markets 44.4%   Equities 31.8%

| | Percent | Prior Period | Current Period |
|---|---|---|---|
| Money Markets | 44.4 % | $0.00 | $100,003.36 |
| Equities | 31.8 | $14,107.00 | $71,606.46 |
| Fixed Income | 23.8 | $10,611.76 | $53,742.39 |
| TOTAL | 100.0 % | $24,718.75 | $225,352.21 |

*Account Allocation shows the percentage that each asset class represents of your total account value. Account Allocation for equities, fixed income, and other categories may include mutual funds and may be net of short positions. NFS has made assumptions concerning how certain mutual funds are allocated. Closed-end mutual funds and Exchange Traded Products (ETPs) listed on an exchange may be included in the equity allocation. The chart may not reflect your actual portfolio allocation. Consult your broker/dealer prior to making investment decisions.*

Account carried with National Financial Services LLC, Member NYSE, SIPC

Y/h/0017 = conference claim. Link on

me to wealth management

Wealth Management = Jason 800-531-8722 x 67172




USAA®

| | | Quantity | Amount |
|---|---|---|---|
| | | | $0.09 |
| | | | $0.09 |
| | | | $0.09 |

## ACTIVITY > OTHER ACTIVITY

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| 07/14/17 | CASH | OTHER CREDIT | ELECTRONIC CREDIT QR04181445 FSB | | $1,000.00 |
| 07/18/17 | CASH | OTHER DEBIT | ELECTRONIC DEBIT Q002755830 FSB | | ($1,000.00) |
| TOTAL OTHER ACTIVITY | | | | | $0.00 |

## Unrealized Gain (Loss) Lot Detail

NFS-provided cost basis, realized gain (loss) and holding period information may not reflect all adjustments necessary for tax purposes.  Please refer to Footnotes and Cost Basis Information at the end of this statement for more information.

| Description | EQUITIES | Account Type | Date Acquired | Symbol/ Cusip | Price on 07/31/17 | Unit Cost | Quantity | Market Value | Original/Adjusted Cost Basis | Unrealized Gain (Loss) | Holding Period |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LOCKHEED MARTIN CORP | | CASH | 03/04/16 | CO    LMT | $292.13 | $220.34 | 1 | $292.13 | $220.34 | $71.79 | LT |
| Total Equities | | | | | | | 1 | $292.13 | $220.34 | $71.79 | |

Account carried with National Financial Services LLC, Member NYSE, SIPC

*8/11/2017 = Contacted USAA. Lisa sent me to wealth management*
*Wealth Management = Jason 800-531-8722 X 67172*

Statement for the Period July 1, 2017 to July 31, 2017
CHRISTINE B WORRELL - Individual
Account Number:



USAA®

## ACTIVITY > INCOME > TAXABLE INCOME *continued*

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| | | | | | $0.00 |
| **Total Taxable Dividends** | | | | | $0.00 |
| **Total Taxable Income** | | | | | $0.00 |
| **TOTAL INCOME** | | | | | |

## ACTIVITY > OTHER ACTIVITY

| Settlement Date | Account Type | Transaction | Description | Quantity | Amount |
|---|---|---|---|---|---|
| | | | | | $1,000.00 |
| 07/17/17 | CASH | OTHER CREDIT | ELECTRONIC CREDIT QR04181445 FSB | | |
| | | | | | ($1,000.00) |
| 07/18/17 | CASH | OTHER DEBIT | ELECTRONIC DEBIT QD02765630 FSB | | $0.00 |
| **TOTAL OTHER ACTIVITY** | | | | | |

## Unrealized Gain (Loss) Lot Detail

NFS-provided cost basis, realized gain (loss) and holding period information may not reflect all adjustments necessary for tax purposes. Please refer to Footnotes and Cost Basis Information at the end of this statement for more information.

### EQUITIES

| Description | Account Type | Date Acquired | Symbol/ Cusip | Price on 07/31/17 | Unit Cost | Quantity | Market Value | Original/Adjusted Cost Basis | Unrealized Gain (Loss) | Holding Period |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 1 | $292.13 | $220.34 | $71.79 | LT |
| LOCKHEED MARTIN CORP | CASH | 03/04/16 | CO LMT | $292.13 | $220.34 | 1 | $292.13 | $220.34 | $71.79 | |
| **Total Equities** | | | | | | | | | | |

Account carried with National Financial Services LLC, Member

# EXHIBIT H

123 120 19 180948P 1005 16 1

ENV# CEBHMKPRBBDSJXM_BBBBB
USAA FINANCIAL ADVISORS, INC.
THROUGH THE COURTESY OF:
USAA INVESTMENT MANAGEMENT CO.
9800 FREDERICKSBURG ROAD
SAN ANTONIO, TX 78288

000861 FIEC3X01 100000 AT 02

CHRISTINE BYRNE WORRELL
13 GAINOR AVE
MAPLE SHADE NJ 08052



USAA number 019122352                          Member Since: 1996

STATEMENT FOR THE PERIOD SEPTEMBER 1, 2019 TO SEPTEMBER 30, 2019

CHRISTINE B WORRELL - Individual
Account Number: ▓▓▓▓▓▓▓▓

For questions about your accounts          **TOTAL VALUE OF YOUR PORTFOLIO**                    **$492.86**
National: 800 531 8722

www.usaa.com

## FOR YOUR INFORMATION

Please log on to usaa.com for more detailed information regarding your account. Go paperless!
We invite you to get ALL your USAA documents online. Paperless delivery is secure, fast and
better for the environment. Review and edit your online document preferences today at
usaa.com/UDO.

To report a complaint, please contact our offices, either by mail at USAA IMCO, 9800
Fredericksburg Road, San Antonio, TX, 78288, Attn: Executive Communications or by phone
at 800-531-8722.

**CHANGE IN VALUE OF YOUR PORTFOLIO**



Change In Value Of Your Portfolio information can be found in Miscellaneous Footnotes at the end of this
statement.

Account carried with National Financial Services LLC, Member
NYSE, SIPC

Page 1 of 8

ENV# CEBHMKPRBBDSJXM_BBBBC
USAA FINANCIAL ADVISORS, INC.
THROUGH THE COURTESY OF:
USAA INVESTMENT MANAGEMENT CO.
9800 FREDERICKSBURG ROAD
SAN ANTONIO, TX 78288



USAA FEDERAL SAVINGS BANK
IRA ROLLOVER
FBO CHRISTINE B WORRELL
13 GAINOR AVE
MAPLE SHADE NJ 08052

Member Since 1996

USAA number 019122352

**STATEMENT FOR THE PERIOD SEPTEMBER 1, 2019 TO SEPTEMBER 30, 2019**

CHRISTINE B WORRELL - USAA FSB Rollover IRA
Account Number: ▉▉▉▉▉▉▉▉

For questions about your accounts:
National: 800 531 8722

**TOTAL VALUE OF YOUR PORTFOLIO**                           **$79,362.22**

www.usaa.com

## FOR YOUR INFORMATION

Please log on to usaa.com for more detailed information regarding your account. Go paperless!
We invite you to get ALL your USAA documents online. Paperless delivery is secure, fast and
better for the environment. Review and edit your online document preferences today at
usaa.com/UDO.

To report a complaint, please contact our offices, either by mail at USAA IMCO, 9800
Fredericksburg Road, San Antonio, TX, 78288, Attn: Executive Communications or by phone
at 800-531-8722.

**CHANGE IN VALUE OF YOUR PORTFOLIO**



Change In Value Of Your Portfolio information can be found in Miscellaneous Footnotes at the end of this
statement.

Account carried with National Financial Services LLC, Member
NYSE, SIPC

Page 1 of 10

# EXHIBIT I

123 120 19 180948P 1005 16 1

PROPERTY SETTLEMENT AGREEMENT

BETWEEN

CHRISTINE BYRNE WORRELL

AND

JAMES WORRELL

Prepared by:

Howard S. Mendelson, Esquire
DAVIS & MENDELSON, L.L.C.
1200 Laurel Oak Road – Suite 101
Voorhees, New Jersey  08043
(856) 627-0100

123 120 19 180948P 1005 16 1

## PROPERTY SETTLEMENT AGREEMENT

THIS IS AN AGREEMENT BETWEEN Christine Byrne Worrell of 612 Windsor Avenue, Maple Shade, New Jersey, 08052 (hereinafter called "Wife") and James Worrell of 612 Windsor Avenue, Maple Shade, New Jersey, 08052 (hereinafter called "Husband") (hereinafter collectively called "the parties").

### BACKGROUND

WHEREAS, the parties were married on October 17, 1998; and

WHEREAS, the parties wish to make arrangements in connection with their living separate and apart, including the settlement of their property rights; the support and maintenance of Husband and Wife; and all other rights and obligations growing out of the marriage relationship; and

WHEREAS, there have been no previous proceedings between the parties in any court pertaining to the marriage relationship, the dissolution thereof, and the maintenance of Husband and/or Wife;

IT IS, THEREFORE, on this _____ day of June, 2010, for the consideration of the mutual promises, covenants and agreements herein contained, AGREED by and between Husband and Wife as follows:

2

# ARTICLE I.

## AGREEMENT TO LIVE SEPARATE AND APART

It shall be lawful for each of the parties at all times to continue to live separate and apart from the other and to conduct, carry on and engage in any employment, business or trade which either may deem fit, free from any control, restraint or interference, directly or indirectly, by the other in all respects as of the parties were sole and unmarried.

# ARTICLE II.

## SUPPORT AND MAINTENANCE OF HUSBAND AND WIFE

1.    MUTUAL WAIVER OF SUPPORT

In consideration for the various terms of this Agreement, the Husband hereby waives, now and forever, notwithstanding any and all future anticipated or unanticipated circumstances, any rights he may have to alimony, maintenance, spousal support or the like from the Wife. Similarly, in consideration for the various terms of this Agreement, the Wife hereby waives, now and forever, notwithstanding any and all future anticipated or unanticipated circumstances, any rights she may have to alimony, maintenance, spousal support or the like from the Husband. The parties specifically acknowledge that the provisions providing for the Wife's receipt of property, as set forth below, was specifically negotiated and agreed upon by the Husband in exchange for and in consideration of the Wife's waiver of her right to alimony as contained in this Agreements.

It is the parties' specific intention to terminate all financial ties between them. It is intended that this severing of financial ties is to be final and irrevocable, notwithstanding any past, current, future or other circumstances, whether anticipated or subject to anticipation. The parties have had the rulings of Crews v. Crews, 164 NJ 11 (2000); Morris v. Morris, 263 N.J. Super. 237 (App. Div. 1993); Smith v. Smith, 261 N.J. Super. 198 (Ch. Div. 1992); Finckin v. Finckin, 240 N.J. Super. 204 (Ch. Div. 1990) and their progeny explained to them at length. The parties hereby

agree that this waiver is non-modifiable under any circumstances as aforementioned.  Further, this "anti-Lepis" provision has been explained to both parties by their respective counsel.

Notwithstanding any actual or perceived ruling by any court within the State of New Jersey, including, but not limited to, those court rulings within the previously cited cases, to the contrary, each party specifically agrees that this alimony waiver, for purposes of the Agreement, shall be non-modifiable and this provision is declared by the parties to be absolutely irrevocable and beyond the jurisdiction of any court to change, even if any or all of the following eventualities occur, whether individually or in combination, including disease or accident that renders either party unemployable; or whether either parties' assets and medical insurance coverage have been depleted to an immaterial level in caring for a disease or accident: (1) the loss of employment or the inability to secure employment by either party; (2) an increase or decrease in the income of either party, no matter how dramatic, and no matter what its nature, scope, or duration; (3) the subsequent acquisition of assets by either party, including, but not limited to, inheritance and/or gifts; (4) the subsequent loss or dissipation of assets, including their home or the equity in their home (each party specifically contemplates the exhaustion of the equity in their respective homes if needed for their support), whether negligent or not, whether through theft, embezzlement, normal expenditures, imprudent investment, frivolous use or through any other happening whatsoever; (5) any increase or decrease in the cost of living, no matter how severe; (6) any illness of any kind that may befall either party; (7) either party's retirement; (8) any normal, ordinary, extraordinary medical, psychiatric, psychological or elder care costs of either party; (9) or any other future event.  The parties specifically understand that the foregoing list of future possible circumstances is **not** exhaustive.

The Husband and Wife further declare that should the provisions of this Agreement wherein they seek to preclude the court from exercising its jurisdiction be held unenforceable, then

4

they wish such court to know that they have, with full knowledge of their present circumstances and with the consideration of all future circumstances, bargained for and are bound by this Agreement and by the transactions set forth in this Agreement, and that Husband and Wife have no right to alimony from the other now and in the future and that this provision has been more specifically bargained for and contemplated in light of the existing case law and any foreseeable modification in that case law.

Both parties recognize that should either attempt to come back to court to modify the terms of this Section of the Agreement, that the other party will suffer substantial and irreparable injury. Accordingly, each party agrees to be responsible in the eventuality that he or she makes any application to the Court in violation of the provisions of this Agreement, for all legal fees incurred by the other in defending said application. This would not include any application by a party to enforce the provisions of this Agreement.

To the extent that either parties' pleadings contain an application for alimony, said applications are hereby dismissed, with prejudice and without costs to either party.

The Wife has considered the overall provisions of this Agreement and pursuant to the case of <u>Crews v. Crews</u>, supra., and recognizes that the assets she is receiving in equitable distribution are sufficient for her to maintain the standard of living during the course of the marriage. To the extent that she subsequently wastes assets, and is not able to maintain the aforementioned standard of living, the Wife waives her right to maintain that standard of living.

2.   MUTUAL WAIVER WITH REGARD TO ORDINARY AND EXTRAORDINARY MEDICAL, DENTAL AND PRESCRIPTION NEEDS OF HUSBAND AND WIFE

Wife hereby waives all past, present and future rights she might otherwise have to require

Husband to provide for or contribute toward her ordinary and extraordinary medical, dental and prescription expenses. Similarly, Husband hereby waives all past, present and future rights he might otherwise have to require Wife to provide for or contribute toward his ordinary and extraordinary medical, dental and prescription expenses. It is the intention of this Agreement that each party shall be solely responsible for his or her own past, present and future ordinary and extraordinary medical, dental and prescription needs.

3.   HUSBAND'S CONTINUATION OF HEALTH INSURANCE FOR BENEFIT OF WIFE UPON WIFE'S NOTICE TO HEALTH PLAN ADMINISTRATOR AS REQUIRED BY THE CONSOLIDATED OMNIBUS RECONCILIATION ACT OF 1985 (HEREINAFTER "COBRA")

Notwithstanding Paragraph 2 of this Article, Wife shall continue to be covered under the health insurance provided by Husband's employer so long as Wife promptly notifies the Health Plan Administrator of her intention of exercising her rights under COBRA. Husband and/or Husband's employer shall pay all premiums associated with Wife's continued health insurance coverage until either (a) Wife secures any alternative health insurance, (b) Wife remarries, (c) Husband remarries, (d) Husband loses his job, (e) the period for such continued coverage lapses under the terms of COBRA, or (f) COBRA otherwise provides for the termination of such coverage. Accordingly, Husband's obligation to pay health insurance premiums on behalf of Wife shall terminate upon the earliest happening of any one of the above events.

4.   HUSBAND'S PAYMENT OF WIFE'S AUTOMOBILE INSURANCE AND CELL PHONE THROUGH CONTINUED MEMBERSHIP IN USAA AND FROM MONETARY CONTRIBUTIONS TO BE PAID FROM WIFE TO HUSBAND

For the mutual promises and covenants contained herein, Husband has agreed that he shall

6

maintain his membership in USAA and shall continue to pay for Wife's automobile insurance and cell phone through said membership. As consideration for same, Wife shall pay Husband the agreed sum of $150.00 on or before the first day of each month; $100.00 of same to be applied toward Husband's payment of Wife's automobile insurance, and $50.00 of same to be applied toward Husband's payment of Wife's cell phone bill.

5.    BASIS OF AGREEMENT

Husband and Wife's wavier of alimony as provided for within this Article has been based upon Husband having a current income of approximately $59,000.00, and upon Wife's having a current income of approximately $137,000.00. This agreement also anticipates that each party will have unearned income based on the assets that he or she will receive in equitable distribution; and upon Wife's agreement to indemnify and hold Husband harmless for any and all expenses associated with the property located at 115 Marlin Road, Tuckerton, New Jersey, 08087.

ARTICLE III.

EQUITABLE DISTRIBUTION OF PROPERTY

1.    REAL PROPERTY KNOWN AS 612 WINDSOR AVENUE, MAPLE SHADE, NEW JERSEY 08052

The parties recognize that Husband is the legal title owner of the property located at 612 Windsor Avenue, Maple Shade, New Jersey, 08052 (hereinafter "Marital Home"). Wife agrees to waive all right, title, claim or interest she might have by equitable distribution or otherwise in and to said Marital Home.

Commencing June 15, 2010, Husband shall be responsible for all payments associated with the Marital Home including all future mortgage payments, utilities, etc.; and shall indemnify and hold Wife harmless for any loss she might sustain as a result of Husband's failure to pay same. Accordingly, effective June 15, 2010, Husband shall also be entitled to sole use, occupancy and possession of the Marital Home.

2.    REAL PROPERTY KNOWN AS 115 MARLIN ROAD, TUCKERTON, NJ 08087

The parties recognize that they own as tenants by the entirety real property known as 115 Marlin Road, Tuckerton, New Jersey, 08087 (hereinafter "Tuckerton Property"). Husband agrees to convey to Wife all right, title, claim or interest he might have by equitable distribution or otherwise in and to the Tuckerton Property. Said conveyance shall be by bargain and sale deed with covenants against grant's acts. The conveyance shall take place within thirty (30) days of the date hereof.

It is recognized that said conveyance shall be subject to an existing first mortgage held by USAA. Wife shall be responsible for all future mortgage payments, as well as additional payments associated with the Tuckerton Property; and shall indemnify Husband for any loss he might sustain as a result of Wife's failure to pay same. Accordingly, effective June 15, 2010, Wife shall also be entitled to sole use, occupancy and possession of the Tuckerton Property.

3.    DISTRIBUTION OF MOTOR VEHICLE

It is agreed by and between the parties that each party shall retain his or her own motor vehicle free and clear of any right, title, claim or interest on the part of the other party. Accordingly, Wife shall be permitted to retain a 2009 Honda Accord in her possession and Husband shall be permitted to retain a 2002 Toyota Forerunner in his possession. Wife shall accordingly be solely responsible for any and all payments associated with the 2009 Honda Accord, and shall indemnify and hold Husband harmless for same. Husband shall accordingly be solely responsible for all payments associated with the 2002 Toyota Forerunner, and shall indemnify and hold Wife harmless for same.

4.    DISTRIBUTION OF CHECKING AND SAVINGS ACCOUNTS

Wife hereby waives all right, title, claim or interest she might have by equitable distribution or otherwise, in any bank account in Husband's name.    Similarly, for the mutual promises and covenants herein contained, Husband hereby waives all right, title, claim or interest he might have by equitable distribution or otherwise, in any bank accounts in Wife's name.

5.    DISTRIBUTION OF RETIREMENT BENEFITS

For the mutual promises and covenants contained herein, Husband and Wife have each agreed to waive any rights they may have to share in the retirement benefits of the other party. Wife accordingly waives all right, title, claim or interest she might otherwise have by equitable distribution or otherwise in and/or to Husband's retirement benefits.    Similarly, Husband accordingly waives all right, title, claim or interest he might otherwise have by equitable distribution or otherwise in and/or to Wife's retirement benefits.

6.    DISTRIBUTION OF TANGIBLE PERSONAL PROPERTY

The parties have heretofore divided their tangible personal property to their mutual satisfaction. Henceforth, each party shall own, have and enjoy, independently of any claim of the other party, all items of tangible personal property of any kind, nature and description and wheresoever situate, which are now owned or held by him or her, with full power to him or her to dispose of same as fully and effectively in all respects and for all purposes as if he or she were married.

7.    EQUITABLE DISTRIBUTION PAYMENT FROM WIFE TO HUSBAND

For the mutual promises and covenants contained herein, Wife shall pay the agreed sum of Thirty-five Thousand Dollars ($35,000.00) to settle any and all additional claims Husband may

9

have otherwise had to additional equitable distribution and/or the payment of alimony from Wife to Husband. Wife shall pay the agreed $35,000.00 to Husband on or before June 15, 2015.

8.    SUBSEQUENTLY ACQUIRED PROPERTY

Husband and Wife each waive and relinquish any and all right he or she may now have or hereafter acquire in any real or tangible or intangible personal property subsequently acquired by the other party.

9.    ADDITIONAL WAIVERS

Other than as set forth in this Agreement, Husband and Wife specifically agree to waive and relinquish any right in all property that is now in existence or may subsequently come into existence of the other party that has been acquired or may be acquired as a result of the marriage relationship, including without limitation, dower, curtesy, right to equitable distribution under N.J.S.A. 2A:34-23, statutory allowance, widow's allowance, right to reside in the marital residence under N.J.S.A. 3B:28-3, right to elective share under N.J.S.A. 3B:8-10, homestead rights, right to any benefit under any will executed prior to the date of their agreement pursuant to N.J.S.A. 3B:8-10, right to take against the will of the other, and right to act as administrator or executor of the other's estate; and each party will, at the request of the other, execute and delivery any and all instruments which may be necessary or advisable to carry into effect said mutual waiver and relinquishment of such interest, rights and claims

10.    TAX EFFECT

All of the foregoing transactions as set forth in this Article are intended to be tax free events. Accordingly, the parties agree that all payments, agreements to make mortgage payments, mortgage payments, transfers, debt satisfactions, relinquishments, distributions, waiver, retentions, divisions and the like required or contemplated by this Article are intended to be non-taxable events under Internal Revenue Service Code 1041 and that they will be treated as such for tax

10

purposes. The parties further designate all such events as not giving rise to items includable in either party's gross income under Internal Revenue Service Code 71 and not giving rise to items deductible by either party under Internal Revenue Code Section 215.

## ARTICLE IV.

### INDEBTEDNESS

Wife represents and warrants to Husband that she has not incurred any debts or obligations for which he or his estate may be liable. Husband represents and warrants to Wife that he has not incurred any debts or obligations for which she or her estate may be liable. If either has incurred debts or obligations, he or she shall be solely responsible for them; and if the other party is called upon to make any payments or contributions toward the same, the responsible party shall indemnify and hold harmless the other party from any obligations hereof.

## ARTICLE V.

### TAXES

1.      AGREEMENT CONCERNING INCOME TAX RETURNS

It is contemplated that the parties will file joint Federal and State income tax returns for the calendar year 2010. It is contemplated that any Federal or State income tax returns or declarations of estimate income due for any period of time after the calendar year 2010 shall be filed as separate returns.

2.      DEFICIENCIES AND REFUNDS

If subsequent to the effective date of this Agreement any deficiencies are asserted by the Internal Revenue Service or by the Division of Taxation of the State of New Jersey, or any refunds are received with respect to joint federal or state income tax returns filed by Husband and Wife prior to the effective date of this Agreement, then such deficiencies shall be borne by and such

refunds shall be the property of Husband.  Wife agrees to sign over to Husband all refund checks jointly made payable to Husband and Wife which come within the scope of this paragraph.

### ARTICLE VI.

### INDEPENDENT LEGAL ADVICE

It is mutually agreed by and between Husband and Wife that this Agreement is made voluntarily by both parties, each having had the opportunity to seek the advice of his or her own counsel.  Both parties further recognize that Howard S. Mendelson, Esquire served only as the mediator with regard to this matter and did not represent either party.  Both parties further recognize being advised by Howard S. Mendelson, Esquire to have this agreement reviewed by an attorney of his or her own choosing prior to executing this agreement.

### ARTICLE VII.

### DIVORCE

1.      NO BAR TO DIVORCE; FINAL AGREEMENT; NO MERGER

Nothing in this Agreement shall be construed as a relinquishment by either party of the right to prosecute or defend any suit for divorce in any court of proper jurisdiction.  Other than upon a showing of substantially changed circumstances, neither party to any such action shall seek alimony or support contrary to the provisions of this Agreement.

It is further specifically understood and agreed that the provisions of this Agreement relating to the equitable distribution of property of the parties as herein contained are accepted by each party as a final settlement for all purposes whatsoever.

Should either of the parties hereto obtain a decree, judgment or order of separation or divorce in any other state, country or jurisdiction, each of the parties hereto consents and agrees that this Agreement and all of its covenants shall not be affected in any way by such separation or divorce, and that nothing in such decree, judgment or order or further modification or revision

12

thereof shall alter, amend or vary any term of this Agreement, whether or not either or both of the parties hereto should remarry, it being understood by and between the parties that this Agreement shall survive and shall not be merged into any decree, judgment or order of separation or divorce.

2.     INCORPORATION WITHIN JUDGMENT

It is specifically agreed, however, that a copy of this Agreement may be marked into evidence at the time of a final divorce hearing and may be incorporated by reference into a divorce judgment.  Said incorporation, however, shall not be regarded as a merger, it being the intent of the parties to permit this Agreement to survive any such judgment.

## ARTICLE VIII.

### COUNSEL FEES

1.     The parties agree that each shall bear the expense of his or her own counsel fees for services rendered in connection with reviewing this agreement and any other counsel fees in connection with obtaining an uncontested divorce.  The parties have equally shared in all fees in connection with the mediation, including the preparation of this agreement. The parties further agree that no additional request for counsel fees shall be addressed to any court should divorce or any other legal proceeding affecting the marriage between the parties subsequently result.  The parties specifically agree that no request for counsel fees shall be made by either party so long as there is adherence to the terms of this Agreement.

## ARTICLE IX.

### WAIVER OF CLAIMS

1.     GENERAL RELEASE BETWEEN THE PARTIES

Except as herein expressly set forth or as may arise out of the making of this Agreement, each of the parties hereto hereby releases the other of and from any and all claims and demands for damages, of any and every nature, which either party ever had, now has or may hereafter have

against the other arising out of or in connection with any matter or thing whatsoever up to the date hereof.

### 2. INDEMNIFICATION AS TO CLAIMS OF THIRD PARTIES

The parties hereby undertake and agree to hold the other free and harmless of and from any debts or obligations contracted by either party prior to or subsequent to the date of this Agreement. Both parties hereby warrant that they have not, by their past conduct, caused the creation of any claims by third parties.   To the extent either party has done so, that party shall be responsible for such claim and shall further indemnify and hold the other party harmless for said claim.

The parties hereby undertake and agree to hold the other free and harmless of and from any debts or obligations contracted by either party prior to or subsequent to the date of this Agreement.

### ARTICLE X.

### GENERAL PROVISIONS

### 1. DOCUMENTS

Husband and Wife hereby agree to execute any and all other papers or instruments in writing if, as and when such executions shall be necessary in order to effectuate the express conditions of this Agreement.

### 2. MODIFICATION OR WAIVER

This Agreement, which contains the entire understanding of the parties hereto, shall be binding on the parties hereto, their heirs, executors, administrators and assigns.  It is the whole and only Agreement between Husband and Wife and shall not be modified or varied by oral understandings.  Before either party seeks a modification of any term of this agreement, the parties agree to first mediate their differences before submitting same to a court of competent jurisdiction.

3.    SITUS

This Agreement is entered into in the State of New Jersey and shall be construed and interpreted under and in accordance with the laws of the State of New Jersey.

4.    NON-INTERFERENCE

Neither of the parties shall annoy or molest the other.  Neither party hereto shall call upon or visit the other, except as set forth in this Agreement.

5.    STRICT PERFORMANCE

Failure on the part of either party to insist upon the strict performance of any of the provisions of this Agreement shall in no way constitute a waiver of any subsequent default of the same or similar nature.

6.    NON-COLLUSION

The parties agree that there have been no collusive agreements made by either of them orally or in writing, nor have any representations by one party been made to the other regarding a divorce to be secured in this or any other jurisdiction; and this Agreement has not been made for the purpose of encouraging any uncontested litigation now pending or which may be undertaken in any matrimonial action of any kind between the parties and submitted for the court's approval.

7.    COOPERATION IN THIRD PARTY OR OTHER LITIGATION

Husband agrees that he will cooperate in the prosecution or defense of any litigation which Wife may institute or which is instituted by others, for any cause which may have accrued prior to the execution of this Agreement.  Similarly, Wife agrees that she will cooperate in the prosecution or defense of any litigation which Husband may institute or which is instituted by others, for any cause which may have accrued prior to the execution of this Agreement.

8. HEADINGS FOR REFERENCE ONLY

The headings preceding the text of the several sections hereof are inserted for convenience and shall not affect the meaning, construction, scope or effect of this Agreement.

9. EQUITABLE DISTRIBUTION

It is specifically understood and agreed that this Agreement constitutes an equitable distribution of property, both real and personal, which was legally and beneficially acquired by Husband or Wife or either of them during the marriage, as contemplated by Chapter 212, Laws of 1971 of the Sate of New Jersey, as amended.

10. PARTIAL INVALIDITY

If any of the provisions of this Agreement are held to be invalid or unenforceable, all other provisions hereof shall nevertheless continue in full force and effect.

11. WARRANTY OF DISCLOSURE

The parties warrant and represent that they have made full disclosure of all assets prior to the execution of this Agreement. Although said disclosure did not take a formal form, the parties acknowledge that reference has been made within this Agreement to all assets that were acquired during the marriage.

The parties further acknowledge that prior to execution of this Agreement they were advised of their right to pursue discovery, including but not limited to, interrogatories, deposition, hiring of experts including accountants and appraisers, as well as the right to pursue other discovery techniques as might be available to them pursuant to the rules of the court. By entering into this Agreement, both parties hereby waive any right they might otherwise have to pursue discovery with regard to the income and assets of the other party.

The parties further acknowledge that by entering into this Agreement, they are satisfied

123 120 19 180948P 1005 16 1

16

with the disclosures that have been made and are further satisfied that this Agreement is a fair, reasonable and equitable resolution of all issues dividing the parties.

_____
CHRISTINE BYRNE WORRELL

_____
JAMES WORRELL

STATE OF NEW JERSEY   )
                      :
COUNTY OF CAMDEN      )

BE IT REMEMBERED that on this _21st_ day of _June_, 2010, before me, the undersigned authority, personally appeared CHRISTINE BYRNE WORRELL., who, I am satisfied, is the Wife named in the foregoing Agreement, and I, having first made known to him the contents thereof, he acknowledged that he signed, sealed and delivered the same as his voluntary act and deed, ALL OF WHICH IS HEREBY CERTIFIED.

_____
AMANDA E. BRADLEY
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 3/15/2012

STATE OF NEW JERSEY   )
                      :
COUNTY OF CAMDEN      )

BE IT REMEMBERED that on this _21st_ day of _June_, 2010, before me, the undersigned authority, personally appeared JAMES WORRELL, who, I am satisfied, is the Husband named in the foregoing Agreement, and I, having first made known to her the contents thereof, she acknowledged that she signed, sealed and delivered the same as her voluntary act and deed, ALL OF WHICH IS HEREBY CERTIFIED.

_____
AMANDA E. BRADLEY
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 3/15/2012

123 120 19 180948P 1005 16 1                    17

# EXHIBIT J

123 120 19 180948P 1005 16 1

DC-111 FINAL JUDGMENT OF DIVORCE - Page 1

Filed with the Court

JAN 08 2018

Thomas J. Walls, Jr., J.S.C.

Plaintiff:      James Worrell
Address:        612 Windsor Avenue
City, St.:      Maple Shade, New Jersey 08052
Phone:          (609) 410-3087

PLAINTIFF PRO-SE

| | | |
|---|---|---|
| James Worrell | : | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | : | |
| | : | CHANCERY DIVISION - FAMILY PART |
| | : | |
| | : | BURLINGTON COUNTY |
| Vs | : | |
| | : | |
| Christine Worrell | : | DOCKET NUMBER _FM-03-251-18_ |
| Defendant. | : | |
| | : | CIVIL ACTION |

**FINAL JUDGMENT**
**ACTION FOR DIVORCE**

This matter coming on to be heard in the presence of James Worrell, Plaintiff Pro Se, and no one appearing for the Defendant, and it appearing from the testimony, Complaint and Proofs taken before the Court that the Plaintiff and Defendant were married on October 17, 1998 and that the Plaintiff having pleaded and proved a cause of action for Divorce on the grounds of Irreconcilable Differences set forth in the Complaint under the statute in such case made and provided that the Plaintiff has been a bonafide resident of the State of New Jersey for more than one year next preceding the commencement of this Action, and jurisdiction having been acquired over the Defendant pursuant to the rules governing the Courts:

123 120 19 180948P 1005 16 1

DC-111 FINAL JUDGMENT OF DIVORCE - Page 2

It is on this ___8th___ day of January 2018,

**ORDERED and ADJUDGED**, that pursuant to the statute in such case be made and provided, the marriage between the parties is dissolved; and it is;

**ORDERED and ADJUDGED** that the Plaintiff and Defendant agreed to each retain their own house.

**ORDERED and ADJUDGED** that the Plaintiff and the Defendant both waive alimony.

**ORDERED and ADJUDGED** that no equitable distribution is sought.

THOMAS J. WALLS, JR., J.S.C.

CERTIFIED TO BE A TRUE COPY

Kelly L. Johnston
Family Division Manager    1/8/18

123 120 19 180948P 1005 16 1



CERTIFIED MAIL

McNEELY MCGUIGAN & ESMI, LLC
8 EAST MAIN STREET
MOORESTOWN, NJ 08057

7019 0700 0000 4996 5612

**First Class Mail**

BAE Systems Us Pension
Post Office Box 98142
El Paso Texas 79998